·POWER SERVICE CORPORATION *vs.* PASCOAG FIRE DISTRICT.

MAY 17, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto and Baker, JJ.

CAPOTOSTO, J.    This is an action of assumpsit in which the plaintiff, an engineering corporation, seeks to recover for services rendered under a certain contract with the defendant.    The case was tried before a jury in the superior court and they returned a verdict for the plaintiff in the sum of $2199.98.    The defendant's motion for a new trial was heard and denied.    The case is before us on defendant's exceptions

to certain rulings during the trial and on its exceptions to the denial of motions for a directed verdict and for a new trial.

This is the second trial of the case. The first trial resulted in a verdict for the plaintiff for $1818.16. In that trial, the defendant's motion for a new trial having been denied, the defendant duly brought the case to this court on its exception to that ruling and the exception was sustained by us in *Power Service Corp.* v. *Pascoag Fire District,* 62 R. I. 167, 4 A. 2d. 261, for the reasons given therein. The basic facts in the instant case are the same as those stated in that opinion and therefore, except when pertinent, need not be repeated here. But, before the second trial, the record of which is now before us, the plaintiff, on motion duly made and granted, amended its pleadings by adding a third count to its declaration in which it specifically set out the 1% clause in the contract that is referred to and considered in our first opinion above-cited. It also introduced new evidence on controlling issues, thereby creating a clear conflict of testimony in the instant case.

The controversy between these parties arises from the following language in the defendant's letter of November 27, 1933, to the plaintiff:

"Gentlemen:

Supplementary to our letter of November 21, we agree to the following:

That if the Pascoag Fire District uses the survey made by your corporation *as a basis* for coming to an agreement with the Pascoag Water Co., either with the Pascoag Water Co. directly, or through the R. I. Public Utilities Commission, that we will pay your corporation as a fee in full for your services, 1% of the estimated cost of the labor and materials that would be used in building a water system in the Pascoag Fire District as set forth in your survey." (italics ours)

The estimated construction cost in the plaintiff's survey for such a system was $181,816.67. Upon this survey the defendant, on July 20, 1934, obtained a grant of $200,000 from the federal government to be used in constructing the proposed new system. Thereafter, the negotiations previously commenced between the defendant and the Pascoag Water Company, with reference to the purchase by the former of the latter's existing waterworks, were resumed with greater intensity and finally resulted in the purchase of those waterworks by the defendant on July 11, 1936 for $160,000. The defendant thereupon abandoned the building of the proposed new water system.

In contrast with the first trial, the parties tried the instant case on the theory that the above-quoted language in the defendant's letter of November 27, 1933 was ambiguous and required explanation. To this end much evidence was introduced by both sides as to whether the survey furnished the defendant by the plaintiff was used "as a basis" for coming to an agreement with the Pascoag Water Company, so as to entitle the plaintiff to the 1% under the contract. The evidence on this point was sharply conflicting.

The plaintiff's evidence supported its contention that, as the defendant could not have obtained a grant of money from the federal government for the construction of a proposed new water system without the survey, which was an indispensable prerequisite to the obtaining of such a grant, the survey and the grant were the effective means of bringing about the sale of the existing waterworks by the Pascoag Water Company to the defendant; and that in this sense the survey was used as *a* basis for coming to an agreement with the Pascoag Water Company. The defendant's evidence, on the other hand, tended to support its theory that the purchase of the existing waterworks was based upon an independent appraisal of that system by a third party; that the maps, figures and other information in the plain-

tiff's survey were of no use in its negotiations with the Pascoag Water Company, and that therefore the plaintiff's survey was not used by the defendant as *the* basis for the purchase of the existing waterworks.

The following testimony is illustrative. Milton Leand, a witness for the plaintiff, testified without objection that "the survey was to be used to get the grant — to get the grant and loan from the government, and that thereby they (meaning the defendant's agents) were going to bring pressure to bear on the Pascoag Water Company to force them to sell them this system," and that if the Pascoag Water Company did sell, the plaintiff would be entitled to 1% under the contract. This testimony was not directly denied by the defendant.

James L. Byrne, the president and principal stockholder of the Pascoag Water Company, also a witness for the plaintiff, testified as follows: "Q. What caused you to come down from your price of $266,000 to $171,000? A. It was a case of being cleaned out or doing that. Q. Did the Government grant have anything to do with that? A. It had everything to do with it."

Rowland Gaunt, a member of the defendant's committee and a witness in its behalf, testified: "Q. Throughout the negotiations for reaching an agreement for the Pascoag Water Company were the figures in the survey of December 15, 1933 (plaintiff's survey) referred to or used? A. We couldn't use them and we didn't use them." Frederick A. Young, an engineer formerly connected with the plaintiff and a witness for the defendant, testified substantially to the same effect in his direct examination. But in cross-examination, when asked if, in negotiating for the purchase of the existing system, the information in the plaintiff's survey would be of "material assistance" to a negotiator who "had become thoroughly familiar with it", replied: "It would be of great help."

The only issue in the case, that is, the real meaning of the admittedly ambiguous language hereinbefore mentioned, was submitted to the jury for determination on the conflicting evidence and contentions of the parties. No requests for instructions were made by the defendant and it took no exception to the charge as given. In the circumstances, the charge of the court became the law of the case. The jury returned a verdict for the plaintiff and the trial justice has approved that verdict. We have examined the evidence and cannot say from our consideration thereof that the trial justice was clearly wrong in denying the defendant's motion for a new trial. The defendant's exception on this point is overruled.

The other exceptions of the defendant have been considered and found to be without merit.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for the entry of judgment on the verdict.

*Judah C. Semonoff, Edmund J. Kelly, Thomas J. Flynn,* for plaintiff.

*Frank F. Davis, Emile H. Ruch,* for defendant.